IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-01518-PSF-KLM

MDM GROUP ASSOCIATES, INC., a Delaware corporation,

     Plaintiff,

v.

RESORTQUEST INTERNATIONAL, INC., a Delaware corporation,

     Defendant.

---

## ORDER ON MOTION TO DISMISS

---

     This matter is before the Court on Defendant's Motion to Dismiss (Dkt. # 10),
filed on September 20, 2006.  Plaintiff filed a response on October 30, 2006 (Dkt. # 19),
and defendant replied on November 24, 2006 (Dkt. # 22).  The motion is fully briefed
and ripe for disposition.

## I.    BACKGROUND

     The following alleged facts are taken directly from plaintiff's complaint (Dkt. # 1).
Defendant ResortQuest International, Inc. ("ResortQuest") operates a network of
vacation rental properties at resort locations in several states.  Compl. ¶ 6.  Plaintiff
MDM Group Associates, Inc. ("MDM") provides insurance and other financial products
and services to individuals and businesses.  *Id.* ¶ 5.  In response to inquiries from
ResortQuest, MDM developed an original product known as the "Peace of Mind
Security Deposit Waiver Program" (the "Program"), which provides vacation property
renters an alternative to making security deposits on those properties.  *Id.* ¶ 7.  Under

the Program, customers pay a fee in exchange for a waiver of liability for accidental damages of up to $3,000 to a rental unit that occur during the customer's stay. *Id.*

As part of its development of the Program, MDM created and wrote the text for a one-page brochure that is used to describe and market the Program. *Id.* ¶ 8 & Ex. 1 thereto. MDM holds a copyright on the brochure, which was registered on January 12, 2001 under Registration No. TX 5-470-863. *Id.* ¶ 10 & Ex. 2 thereto. The brochure is entitled "Peace of Mind Protection Plan Limited Damage Waiver" and is organized into the following sections: (1) "Terms of Waiver," which generally describes how the plan works; (2) "Conditions," which lists certain types of damages that are not included in the customer's liability waiver, such as "Acts of God," "Intentional Acts," "Gross negligence or willful and wanton conduct," and "Normal wear and tear"; (3) "Definitions," which defines certain terms used in the brochure; (4) "Administrative Procedures," which discusses applicable procedures in the event damage waivers are claimed by the customer; and (5) "Terms of Coverage," which states when the plan takes effect and terminates. Ex. 1 to Compl. The brochure also states: "Plan is designed by MDM Group Associates, Inc." *Id.*

In or around November 1999, ResortQuest agreed to offer the Program to its vacation rental customers and to pay a commission to MDM on the basis of each sale. Compl. ¶ 12. ResortQuest implemented the Program and purchased insurance to cover its liabilities under the Program. *Id.* & Ex. 4 thereto. On June 8, 2000, ResortQuest notified MDM that it was canceling its participation in the Program with the exception of an office in North Carolina that would continue to offer it. Compl. ¶ 13. In

November 2000, MDM discovered that ResortQuest was still offering the Program outside of North Carolina and using MDM's brochure without permission.  *Id.* ¶ 14.

MDM contacted ResortQuest on January 30, 2001, demanding that it either cease using the brochure or pay appropriate commissions.  *Id.* ¶ 16 & Ex. 7 thereto. ResortQuest responded on February 20, 2001, stating that its continued use of MDM's brochure had been inadvertent and that ResortQuest would no longer use the brochure except in North Carolina.  *Id.* ¶ 17 & Ex. 8 thereto.  ResortQuest continued to use the brochure in North Carolina through December 2004, at which time it canceled its participation in the Program.  *Id.* ¶¶ 18–19.  MDM subsequently learned ResortQuest was continuing to use MDM's brochure in North Carolina without permission and without paying commissions to MDM.  *Id.* ¶ 19.  MDM also discovered ResortQuest was using, at numerous resorts in several states, brochures that were substantially similar to MDM's brochure.  *Id.* ¶ 20.

MDM filed this lawsuit on July 26, 2006, asserting the following causes of action: (1) copyright infringement; (2) unfair competition in violation of § 43 of the Lanham Act; (3) common law unfair competition; (4) violations of the Colorado Consumer Protection Act; and (5) unjust enrichment.  ResortQuest filed a motion to dismiss all five claims under F.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted.

## II.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  In ruling on a motion

to dismiss for failure to state a claim upon which relief can be granted, a court "must construe the complaint in favor of the complaining party," *Utah v. Babbitt*, 137 F.3d 1193, 1204 (10th Cir. 1998), and must draw all reasonable inferences in favor of the plaintiff. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). The court will dismiss a claim under F.R.Civ.P. 12(b)(6) when it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *see Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998), or when an issue of law is dispositive. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

III.  **ANALYSIS**

    A.  **Copyright Infringement Claim**

MDM asserts ResortQuest has used and is using marketing material that copies or is derived from its brochure in violation of federal copyright laws. Compl. ¶¶ 29–30. To recover for copyright infringement under the Copyright Act, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Whether a work is subject to copyright protection is a question of law. *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 n.5 (1st Cir. 2001).

        *1. Merger Doctrine*

ResortQuest argues MDM's brochure is not subject to copyright protection as a matter of law under the merger doctrine. This doctrine stems from the fundamental principle that "copyright law protects tangible, original expressions of ideas, not ideas

4

themselves." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir.), *cert. denied*, 513 U.S. 820 (1994) (citing 17 U.S.C. § 102(a), (b)).  In turn, even "'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.'"  *BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993), *cert. denied*, 510 U.S. 1101 (1994) (quoting *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991)).

ResortQuest argues the First Circuit's reasoning in *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir. 1967), regarding the merger doctrine is applicable here.  In *Morrissey*, the plaintiff owned a copyright on a set of rules for a sweepstakes contest used to promote consumer products.  *Id.* at 676.  The defendant conducted such a contest to promote one of its products, and the plaintiff alleged the defendant infringed its copyright on the rules by copying Rule 1 almost verbatim.  *Id.*  That rule essentially explained to participants how to enter, where to view official rules, what information to send, and where to send it.  *See id.* at 678.  The First Circuit held that "the matters embraced in Rule 1 [were] so straightforward and simple" that there was "at best only a limited number" of forms of expression such that "to permit copyrighting would mean that a party or parties, by copyrighting a mere handful of forms, could exhaust all possibilities of future use of the substance."  *Id.* at 678–79.

Similarly, ResortQuest contends, the uncopyrightable legal concept of a rental property damage waiver can be expressed in "at best only a limited number of ways" such that copyrighting any form of expression of that concept would preclude its future

use by others.  *See* Def.'s Mot. at 5–7.  The Court disagrees and finds *Morrissey*

distinguishable.  *Morrissey* involved the copying of a single rule applicable to a

particular kind of box top sweepstakes contest.  379 F.2d at 678; Pl.'s Resp. at 5.  By

contrast, the overall concept of a rental property damage waiver is not so limited and,

at least at this early stage of the proceedings, the Court cannot say as a matter of law

that there are so few ways to express the concept that the merger doctrine applies.

The Court finds guidance in *William A. Graham Co. v. Haughey*, 430 F. Supp. 2d

458 (E.D. Pa. 2006), in which the court held that a standard client proposal prepared by

an insurance company, which the company modified as needed to present to various

clients, was subject to copyright protection.  The defendant argued that a certain

section of the proposal entitled "Coverage Specifications," which contained lists of

features that may be included in various insurance policies, was not copyrightable

because the words used to describe those features were commonly used in the

insurance industry, and the information in that section thus could only be expressed in

a limited number of ways.  *Id.* at 466.  The court disagreed, holding the evidence

demonstrated "that there are various options for the selection and arrangement of

insurance coverage terms."  *Id.*

Just as the plaintiff in *Graham* claimed a copyright not in the insurance terms

themselves, but "in the way in which it chose to present that information to clients," in

this case MDM claims a copyright not in the legal concepts of "Acts of God" or "Normal

wear and tear," but in the general organization and presentation of the damage waiver

program, which includes those conditions.  The Court holds that, at this stage of the

proceedings, ResortQuest has not demonstrated as a matter of law that the number of ways in which the damage waiver program can be expressed is "so few as to represent a merger with the underlying idea." *Graham*, 430 F. Supp. 2d at 466.  Thus, ResortQuest is not entitled under the merger doctrine to dismissal of MDM's copyright infringement claim under F.R.Civ.P. 12(b)(6).

### 2.  Statute of Limitations

Under the Copyright Act, a claim of infringement must be brought within three years of when the claim accrued.  17 U.S.C. § 507(b).  A copyright infringement claim accrues when the plaintiff "has knowledge of a violation or is chargeable with such knowledge." *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1216 (D. Colo. 1999) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)).  ResortQuest argues MDM expressly asserted that it had knowledge of ResortQuest's alleged infringement in November 2000, when MDM "discover[ed] that ResortQuest was continuing to use the MDM Brochure to sell MDM's product, without permission."  Compl. ¶ 14.  Thus, ResortQuest contends, the three-year limitations period had run no later than October 2003, and MDM's infringement claims, which were filed on July 26, 2006, are thus barred by the statute of limitations.

MDM argues the statute of limitations was tolled by the continuing nature of the infringement and ResortQuest's fraudulent concealment of the infringement.  In *Taylor v. Meirick*, the Seventh Circuit held that "the copyright statute of limitations is tolled by 'fraudulent concealment' of the infringement."  712 F.2d 1112, 1118 (7th Cir. 1983). The defendant in *Taylor* took active steps to conceal his infringement of certain

7

copyrighted maps by putting his own copyright on maps he had copied from the plaintiff. *Id.* The court held that such an action was "calculated to obstruct any inquiry" the plaintiff might have made and thus tolled the statute of limitations. *Id.* In addition, the court held that the plaintiff could sue for infringing sales that occurred more than three years before he sued because of the continuing nature of the wrong and because "the statute of limitations does not begin to run on a continuing wrong till the wrong is over and done with." *Id.*; *see also Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (stating that "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begins to run from, the date of the last injury"). The Tenth Circuit has acknowledged application of the continuing wrong doctrine in cases involving "inculpatory parties who fraudulently concealed their conduct so the plaintiffs were prevented from timely coming forward to seek redress." *United States v. Hess*, 194 F.3d 1164, 1176 (10th Cir. 1999) (citing *Tiberi*, 89 F.3d at 431, and *Taylor*, 712 F.2d at 1118–19).

The Court holds that the allegations in the complaint in this case are sufficient at this point to toll the statute of limitations on MDM's copyright infringement claims. When MDM initially discovered in November 2000 that ResortQuest was continuing to use MDM's brochure without consent, MDM contacted ResortQuest's chief operating officer to demand that ResortQuest cease using the brochure or pay appropriate commissions. Compl. ¶ 16 & Ex. 7 thereto. ResortQuest responded that "any use of the MDM brochures past the June 8, 2000 termination date was completely inadvertent" and informed MDM: "Be assured that the use of your brochures, except as may be

connected with the North Carolina contracts, has stopped and will not happen again." *Id.* ¶ 17 & Ex. 8 thereto.  Thereafter, "ResortQuest continued to use MDM's brochure with permission in North Carolina through December 2004, and MDM had no reason to believe its chief operating officer had been disingenuous."  *Id.* ¶ 18.  It was not until after ResortQuest canceled its North Carolina participation in the Program that MDM learned ResortQuest was continuing to use its brochure at that and other locations without permission and without paying commissions.  *Id.* ¶¶ 19–20.

The alleged statements by the ResortQuest representative, combined with the continuing relationship between the two companies thereafter, could amount to active steps by ResortQuest to conceal its continued use of MDM's brochure.  Depending on the evidence, MDM may be able to show that ResortQuest's letter was "calculated to obstruct any inquiry" MDM might have made into ResortQuest's continued use of the brochure outside North Carolina.  *Taylor*, 712 F.2d at 1118.  Thus, at this stage of the litigation, dismissal of plaintiff's copyright infringement claims under F.R.Civ.P. 12(b)(6) on statute of limitations grounds is not appropriate.  Because of the resolution of this issue, the Court need not reach MDM's alternative argument that the statute of limitations is subject to equitable tolling based on ResortQuest's allegedly misleading conduct.

**B.    Claim for Unfair Competition in Violation of § 43(a) of the Lanham Act**

The Lanham Act generally "was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against

unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30

(2003) (quoting with ellipsis 15 U.S.C. § 1127).  Section 43(a) of the Lanham Act

provides in pertinent part:

> Any person who, on or in connection with any goods or services, . . . uses
> in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to
> the affiliation, connection, or association of such person with another
> person, or as to the origin, sponsorship, or approval of his or her goods,
> services, or commercial activities by another person, . . .
>           . . . .
>
> shall be liable in a civil action by any person who believes that he or she
> is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  MDM alleges ResortQuest has committed three types of

Lanham Act violations under § 43(a)(1)(A):  (1) false designation of origin; (2) false or

misleading representations of fact regarding sponsorship or approval; and (3) trade

dress infringement.[1]  These allegations are discussed in turn.

### 1.  False Designation of Origin

In its complaint, MDM alleges that "ResortQuest has published and otherwise

used in commerce certain advertising brochures and materials in connection with its

products and services," and that those "advertising materials contain false designation

of the origin of MDM's Security Deposit Waiver Program."  Compl. ¶¶ 34–35.  This

---

[1] Plaintiff does not appear to be asserting a claim for false advertising under § 43(a)(1)(B) of the Lanham Act, which prohibits the use of any false or misleading description or representation of fact that, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).

constitutes a claim of "reverse passing off," in which a "producer [ResortQuest] misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 n.1 (citation omitted).  The Supreme Court's decision in *Dastar* governs the Court's evaluation of this claim.

In *Dastar*, the defendant purchased videos of a television series on which the copyright had expired, copied them, made some "arguably minor" revisions, and released them under a new title, referencing the defendant (or affiliated entities) and various employees thereof as the distributor and producers.  *Id.* at 26–27, 31.  The Supreme Court rejected the plaintiffs' reverse passing off claim under the Lanham Act for failure to credit the original television series, holding that the term "origin" as used in § 43(a)(1) is "incapable of connoting the person or entity that originated the ideas or communications" contained in the produced goods.  *Id.* at 32.  This is so, the court held, even with respect to a "communicative product" like MDM's brochure, which is "valued not primarily for its physical qualities, . . . but for the intellectual content that it conveys."  *Id.* at 33.  In declining to recognize a cause of action under § 43(a) "for, in effect, plagiarism," the Supreme Court found that such a holding would conflict with federal copyright law, "which addresses that subject specifically."  *Id.* at 33, 36.  The court concluded:

> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Id.* at 37 (emphasis in original).

Under *Dastar*, then, the Lanham Act does not prohibit the conduct complained of here—that ResortQuest published materials describing the damage waiver policy that were substantially similar to MDM's brochure without crediting MDM.  In an apparent attempt to distinguish this case from *Dastar*, MDM argues that it is both the author of its brochure as well as the producer of the underlying tangible goods being offered for sale, such that MDM is entitled to the protections of the Lanham Act.  Pl.'s Resp. at 10. However, there are no allegations that MDM produced the actual brochures that are being used by ResortQuest, as "the only tangible goods in issue here are the copies that ResortQuest itself physically created."  Def.'s Reply at 10.  Rather, the complaint alleges that ResortQuest distributed materials about the damage waiver policy that essentially copied the text from MDM's brochure.  *See* Compl. ¶ 14.  This is exactly the kind of allegation that the copyright laws were meant to address.  *Dastar*, 539 U.S. at 33.  Indeed, the Court has already held that MDM stated a claim against ResortQuest for copyright infringement.  Under *Dastar*, MDM may not state a Lanham Act claim for the same alleged conduct—that ResortQuest improperly copied its brochure.

### 2. *False Designation of Sponsorship or Approval*

MDM alleges "ResortQuest's advertising material falsely suggested that MDM knew about and approved the use of its copyrighted brochure.  ResortQuest's actions . . . falsely suggest[] a sponsorship, connection, or association with MDM, thereby injuring MDM and the public."  Compl. ¶ 15.  This corresponds to MDM's factual allegation that, when MDM first discovered in November 2000 that ResortQuest was

using MDM's brochure without permission, the brochure ResortQuest was distributing still contained the phrase, "Plan is designed by MDM Group Associates, Inc." *Id.* ¶ 14. Similarly, when ResortQuest allegedly continued to use the brochure in North Carolina after terminating its participation in the Program, it published a brochure containing that phrase. *Id.* ¶ 19 & Ex. 9 thereto.

Section 43(a)(1)(A) of the Lanham Act prohibits the use of false or misleading representations of fact that is likely to cause confusion as to the sponsorship or approval of one's goods or services.  15 U.S.C. § 1125(a)(1)(A).  This would encompass MDM's apparent allegation that the brochures' statement that MDM designed the plan was misleading in that it suggested MDM's sponsorship or approval of the plan.  ResortQuest argues the "essential gravamen" of plaintiff's unfair competition claim is the alleged false representation as to the source of the brochure, which the Court has held is barred by *Dastar*.  Def.'s Reply at 11.  However, regardless of whether the false sponsorship allegations make up a relatively minor part of plaintiff's Lanham Act claims or injuries, they are nevertheless separate from plaintiff's false designation of origin claims and are not governed by *Dastar*.  Thus, this claim will not be dismissed at this early stage of the proceedings.

### 3.  *Trade Dress Infringement*

Section 43(a) of the Lanham Act protects trade dress by providing a cause of action against a person for the use of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ."  15 U.S.C. § 1125(a)(1)(A); *Wal-*

*Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).  A product's trade dress "is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques."  *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).  To demonstrate trade dress infringement for product packaging, the plaintiff must demonstrate (1) that its trade dress is inherently distinctive or has become distinctive through secondary meaning, and (2) likelihood of confusion.  *Id.*  The plaintiff must also demonstrate that the trade dress is not functional.  *Id.*  Trade dress protection "exists to promote competition."  *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001).

A product's trade dress "is inherently distinctive if its 'intrinsic nature serves to identify a particular source.'"  *Sally Beauty Co.*, 304 F.3d at 977 (quoting *Two Pesos*, 505 U.S. at 768).  "Such trade dresses 'almost *automatically* tell a customer that they refer to a brand and immediately signal a brand or a product source.'"  *Id.* (quoting with emphasis *Samara Bros.*, 529 U.S. at 212).  MDM argues that its trade dress "as embodied in its sales brochure," such as its list of program features by subtopic in a certain order along with the overall layout, amounts to a "largely arbitrary" combination of elements that is inherently distinctive and thus protected by the Lanham Act.  Pl.'s Resp. at 11.  However, leaving aside that MDM's *complaint* contains no allegations concerning the distinctive nature of its brochure for purposes of trade dress infringement, there is nothing about the overall appearance of MDM's brochure that

14

intrinsically serves to identify MDM as its source. At best, MDM's trade dress is merely "descriptive" in that it "conveys an immediate idea of the . . . qualities or characteristics" of the damage waiver program. *Sally Beauty Co.*, 304 F.3d at 977 (quotation omitted). A descriptive trade dress is not entitled to protection "unless it has acquired secondary meaning in the marketplace." *Id.* at 978. MDM has not alleged in its complaint, either expressly or by implication, that its trade dress has acquired secondary meaning in the marketplace. Without such allegations, MDM cannot state a claim for trade dress infringement, and ResortQuest is entitled to dismissal of this claim.

### C.    State Law Claims for Common Law Unfair Competition and Violations of Colorado Consumer Protection Act ("CCPA")

ResortQuest contends that MDM's third and fourth claims for relief, which are based on state law doctrines of unfair competition, are "congruent" with the claims brought under the Lanham Act and are thus subject to dismissal for the same reasons as MDM's Lanham Act claims. Def.'s Mot. at 15 (citing *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1186 (C.D. Cal. 2003), and other cases). To the extent plaintiff's state law unfair competition claims are based on allegations of false designation of origin or "reverse passing off," those claims are dismissed for the same reasons the Court dismissed plaintiff's Lanham Act claims that are based on such allegations. However, plaintiff's state law claims that stem from allegations of misrepresentations regarding sponsorship or approval survive ResortQuest's motion to dismiss along with plaintiff's corresponding Lanham Act claims.

ResortQuest alternatively argues, solely with respect to MDM's CCPA claim, that the claim is premised entirely on out-of-state conduct and is thus barred by the Due Process Clause of the Fourteenth Amendment, which "restricts the extraterritorial application of state statutes." Def.'s Mot. at 18.  However, an evaluation of the extent of the connection between ResortQuest's challenged actions and Colorado, if any, is premature.  One of the requirements of a CCPA claim is that the challenged practice must significantly impact the public as actual or potential consumers of the defendant's goods, services, or property. *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002) (citing *Hall v. Walter*, 969 P.2d 224 (Colo. 1998)). There is no way to determine at this point the number of Colorado consumers who have been or may be affected by ResortQuest's challenged actions.  And the allegations in MDM's complaint do not foreclose such an impact on Colorado consumers.  Thus, ResortQuest is not entitled to dismissal of MDM's CCPA claim under F.R.Civ.P. 12(b)(6).

### D.    Unjust Enrichment

MDM's unjust enrichment claim is based on its allegations that ResortQuest derived a benefit from its unauthorized use of MDM's copyright that would be unfair to retain without compensation to MDM.  Compl. ¶¶ 56–58.  ResortQuest seeks to dismiss this claim as preempted by the Copyright Act.

The Copyright Act preempts a state cause of action if "(1) the work is within the scope of the subject matter of the copyright as specified in 17 U.S.C. §§ 102 and 103, and (2) the rights granted under state law are equivalent to any exclusive rights within

16

the scope of the federal copyright as set out in 17 U.S.C. § 106." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1542 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996) (quotation omitted).  The second element of this test, which is the only one at issue here, mandates preemption unless the state cause of action "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display" that renders the state claim "qualitatively different from, and not subsumed within, a copyright infringement claim." *Id.* at 1543 (quotation omitted).  In determining whether a state cause of action encompasses rights equivalent to the Copyright Act, courts in the Tenth Circuit "compare the elements of the causes of action, not the facts pled to prove them." *Id.*

A claim of unjust enrichment under Colorado law requires proof of the following: (1) the defendant received a benefit; (2) at the plaintiff's expense; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *Ciccarelli v. Guaranty Bank*, 99 P.3d 85, 89 (Colo. App. 2004).  Federal courts addressing the issue have generally held that the "extra element" of a state law unjust enrichment claim that arises solely from a defendant's unauthorized use of a copyrighted work "does not qualitatively change the rights at issue, [*i.e.*,] the rights the plaintiff holds in the copyrighted work, and does not avoid preemption." *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003); *see also, e.g.*, *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) ("While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright

17

infringement."); *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1321 (N.D. Okla. 2006) (a claim for unjust enrichment based solely on the defendant's unfair economic gain from violating plaintiff's copyright would be preempted); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537–38 (E.D. Va. 2005) (dismissing unjust enrichment claim based on alleged harm caused solely by unauthorized use of copyrighted material).

Under the reasoning of these courts, with which this Court agrees, MDM's unjust enrichment claim is preempted by the Copyright Act.  The allegations on which MDM bases its unjust enrichment claim are: (1) "ResortQuest has benefited from its use of the MDM copyright"; (2) "The benefit to ResortQuest came at the expense of MDM, and as a result of MDM's efforts in developing its product and brochure"; and (3) "The circumstances under which ResortQuest derived a benefit from MDM's copyright make it unfair for ResortQuest to retain the benefit without compensation to MDM."  Compl. ¶¶ 56–58.  Thus, the only unjust benefit ResortQuest allegedly received was from its violation of plaintiff's copyright, and the claim contains no additional element sufficient to render it qualitatively different from plaintiff's claim of copyright infringement. Because the Copyright Act preempts plaintiff's unjust enrichment claim, it is dismissed under F.R.Civ.P. 12(b)(6).

IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. # 10) is GRANTED IN PART and DENIED IN PART.  Plaintiff's copyright infringement claim remains pending, and plaintiff's Lanham Act, common law unfair competition, and

CCPA claims remain partially pending in accordance with this Order.  Plaintiff's unjust

enrichment claim is DISMISSED WITH PREJUDICE.

DATED:  September 28, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge