IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-01518-PAB-KLM

MDM GROUP ASSOCIATES, INC., a Delaware Corporation,

      Plaintiff,

v.

RESORTQUEST INTERNATIONAL, INC., a Delaware Corporation,

      Defendant.

_____

**ORDER GRANTING SUMMARY JUDGMENT**
_____

This matter is before the Court on defendant ResortQuest International, Inc.'s

("ResortQuest") motion for summary judgment [Docket No. 78].  ResortQuest moves for

summary judgment on all of plaintiff MDM Group Associates, Inc.'s ("MDM") pending

claims.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1400, and

§ 1367.

**I.  BACKGROUND**

**A.  Factual Background**

This case involves a dispute over ResortQuest's alleged use and copying of

language authored and copyrighted by MDM that describes a rental unit damage waiver

program.  MDM provides insurance, financial products, and related services to its

clients and develops and sells specialty insurance products.  Pl.'s Resp. to Def.'s Mot.

for Summ. J. ("Resp.") [Docket No. 83], Ex. 25 ¶ 2.  ResortQuest is a Delaware

corporation that manages vacation rental property.  *Id.*  ResortQuest operates a

network of vacation rental properties at resort locations in several states.  Compl.

[Docket No. 1] ¶ 6.  ResortQuest contacted MDM in 1999 to help ResortQuest develop

a damage waiver program known as the "Peace of Mind Benefit" (referred to herein as

"the Program").  Def.'s Mot. for Summ. J. ("MSJ") at 2 & Ex. A-3 at 10-11; Resp., Ex. 25

¶ 3.  Under the Program, vacation property renters pay a relatively small non-refundable

fee in lieu of a security deposit on their rental property in exchange for a waiver of

liability for accidental damages of up to $3,000 to a rental unit that occur during the

customer's stay.  Resp., Ex. 25 ¶ 3; Def.'s Reply Br. in Supp. of MSJ ("Reply") [Docket

No. 95] at 2-3.

In developing the Program, MDM created a one-page "brochure" that describes

the terms of the limited damage waiver.  Resp., Ex. 25 ¶3, Compl., Ex. 1.  MDM holds a

copyright in the brochure, registered on January 12, 2001 under Registration No. TX

5-470-863.  Compl. ¶ 10 & Ex. 2.  The brochure is entitled "Peace of Mind Protection

Plan Limited Damage Waiver" and includes text along the bottom of the page stating:

"Plan is designed by MDM Group Associates, Inc."  *Id.*, Ex. 1.  Beginning in late 1999,

ResortQuest implemented the Program and, through MDM, purchased insurance to

cover its liabilities under the Program.  MSJ at 2; Resp., Ex. 25 ¶ 5.  In June 2000,

ResortQuest terminated its business relationship with MDM regarding the Program, with

the exception of ResortQuest locations in North Carolina.  MSJ at 3; Resp., Ex. 25 ¶ 6.

In November 2000, MDM discovered that ResortQuest was still implementing a

damage waiver program using MDM's brochure.  Pl.'s Resp., Ex. 25 ¶ 7; Reply at 4.

On January 30, 2001, MDM contacted ResortQuest demanding that it either cease

using the brochure or pay appropriate commissions.  Resp. Ex. 3 & Ex. 25 ¶ 7.  On

February 20, 2001, ResortQuest responded stating that its continued use of MDM's brochure had been inadvertent and that ResortQuest would no longer use the brochure except in North Carolina.  *Id.*, Ex. 1.  In May 2001, MDM conducted an investigation into ResortQuest's existing practices concerning damage waivers at its properties and its use of the MDM damage waiver brochure.  MSJ, Ex. A-7.  Michael McNasby, an MDM employee and the son of Joseph McNasby, MDM's President, testified that in October 2003 he attended a presentation on damage waiver programs by Al Williams, a ResortQuest employee.  Def.'s Reply, Ex. A-15 at 6-16.  During that presentation, Mr. Williams discussed how damage waivers could be used as a revenue generator and how damage waiver programs did not constitute insurance.  *Id.*  Al Williams offered to provide attendees with a copy of the damage waiver program literature he was using at the time.  *Id.* at 10 & Ex. A-15 at 12-13.  Michael McNasby obtained a copy of the CD of Al Williams' presentation immediately after the presentation and sent it to his father for review.  Ex. A-15 at 10-11.

ResortQuest continued to use the brochure in North Carolina through December 2004, at which time it canceled its business relationship with MDM.  Resp. at 4-5; Reply at 4.  In March 2005, MDM discovered that ResortQuest continued to offer a damage waiver program and, in at least one instance, distributed MDM's brochure in connection with a rental reservation.  Pl.'s Resp., Ex. 5 (facsimile sent from North Carolina ResortQuest location to Michael McNasby in response to his request for damage waiver information in connection with a reservation) & Ex. 6.

## B.  Procedural Background

MDM filed its complaint on August 3, 2006, asserting the following causes of action: (1) copyright infringement; (2) unfair competition in violation of § 43 of the Lanham Act, including: (a) false designation of origin; (b) false or misleading representation of fact regarding sponsorship or approval; and (c) trade dress infringement; (3) common law unfair competition; (4) violations of the Colorado Consumer Protection Act; and (5) unjust enrichment.

On September 20, 2006, ResortQuest filed a motion to dismiss all five claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted [Docket No. 10].  On October 1, 2007, the Court granted in part and denied in part ResortQuest's motion to dismiss.  Order on Mot. to Dismiss ("October 1, 2007 Order") [Docket No. 53].  Specifically, the Court: (1) dismissed MDM's Lanham Act false designation of origin and trade dress infringement claims; (2) dismissed MDM's state law claims for common law competition and violation of CCPA to the extent that these claims are based on allegations of false designation of origin – but allowed them to the extent that they stem from misrepresentation regarding sponsorship or approval; and (3) dismissed MDM's claim of unjust enrichment as preempted by the Copyright Act.

On July 28, 2008, ResortQuest filed its motion for summary judgment on MDM's remaining claims of copyright infringement, false sponsorship under federal and state law, and violation of the Colorado Consumer Protection Act.  MDM responded on August 18, 2008 [Docket No. 83] and ResortQuest filed a reply brief on September 9, 2008 [Docket No. 95].  The motion is fully briefed and ripe for disposition.

## II.  ANALYSIS

### A.  Legal Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### B.  Statute of Limitations

ResortQuest asserts that MDM's copyright claim is completely barred by the statute of limitations under 17 U.S.C. § 507(b) because MDM discovered the alleged infringement more than three years before it filed this lawsuit.  In response, MDM asserts that, even if some of its claims of copyright infringement are untimely, the statute of limitations applicable to such claims should be equitably tolled.

5

Section 507(b) of the Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b) (2006).  "A cause of action for copyright infringement under section 507(b) of the Copyright Act accrues 'when one has knowledge of a violation or is chargeable with such knowledge.'"  *Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1216 (D. Colo. 1999) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)); *see also Home Design Services, Inc. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007) ("[W]hen a statute of limitations is silent on the matter a claim accrues when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.").

ResortQuest previously moved to dismiss MDM's copyright claim on statute of limitations grounds, citing MDM's allegation in its Complaint that "[i]n November 2000, MDM discovered that ResortQuest was continuing to use the MDM Brochure to sell MDM's product, without permission."  Compl. ¶ 14.  ResortQuest now argues, as it did in its motion to dismiss, that in light of MDM's admission of its discovery of alleged infringement in November 2000, the three-year limitations period expired no later than October 2003.  Thus, ResortQuest argues that MDM's copyright claim is untimely because MDM did not assert that claim until MDM commenced this lawsuit on August 3, 2006.  MDM does not contest the fact that it first discovered ResortQuest's allegedly infringing conduct in the late 2000 to early 2001 time frame.  *See* MSJ at 5 (stating that "MDM first discovered the alleged infringement by ResortQuest in November 2000");

6

Resp. at 2-3 (discussing exchange between MDM and ResortQuest in early 2001 without contesting time frame of MDM's initial discovery) & Ex. 25 ¶ 7.

Based on MDM's admission that it first discovered ResortQuest's alleged infringement in November 2000, ResortQuest has met its burden on its statute of limitations defense with respect to copyright infringement claims accruing more than three years prior to the commencement of this action.  The Tenth Circuit has not addressed whether, in a case of continuing or repeated infringement, the statute of limitations should be tallied forward from the date of the first infringement or backward from the date the action was filed.  The majority view among other courts, however, supports counting the three-year limitations period backward from the date that the complaint was filed, thus making timely any claims that accrued within the three years preceding the filing date.  *See*, *e.g.*, *Rocking Chair Enters., L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1266 (W.D. Okla. 2005) ("In a case of a continuing copyright infringement, an action may be brought only for those acts that accrued within the three years preceding the filing of the lawsuit."); *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief."); *Home Design Servs., Inc. v. B & B Custom Homes*, 509 F. Supp. 2d 968, 973 (D. Colo. 2007) (holding that a plaintiff "is entitled to recover damages on any infringement which occurred within three years of the time when plaintiff knew or should have known of the existence and cause of the injury which is the basis of Plaintiff's action"); *see also* 1-12 Nimmer on Copyright § 12.05[B][1][*b*] (hereinafter "Nimmer") ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same

7

work are barred because they occurred more than three years previously."). Adopting

ResortQuest's contrary position would have the nonsensical effect of charging MDM

with knowledge of violations that had not yet occurred. *See Fisher*, 37 F. Supp. 2d at

1216 (holding that copyright infringement claim accrues when one has knowledge of a

violation or is chargeable with such knowledge). I therefore conclude that any claims

that MDM may have resulting from alleged copyright infringement that occurred three

years before it filed its complaint or later – that is, after August 3, 2003 – are timely.

As to MDM's claims that accrued before August 3, 2003, MDM bears the burden

to prove circumstances that justify tolling the statute of limitations. *See Olson v. Fed.

Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004). MDM

maintains that its copyright infringement claims based on conduct that occurred earlier

than August 3, 2003 are not time barred for two reasons: (1) the statute of limitations

was equitably tolled by ResortQuest's fraudulent concealment of ongoing infringement;

and (2) the "continuing wrong" exception discussed in *Taylor v. Meirick*, 712 F.2d 1112

(7th Cir. 1983), allows MDM to recover damages for infringement predating the

limitations period so long as the last act of infringement fell within that period.

ResortQuest properly acknowledges that the copyright statute of limitations is tolled by

fraudulent concealment of the infringement. Reply at 7; *see Taylor*, 712 F.2d at 1118;

*Fisher*, 37 F. Supp. 2d at 1217. However, ResortQuest argues such tolling is

inapplicable in this case because it did not actively deceive MDM.

MDM survived ResortQuest's motion to dismiss on the statute of limitations issue

based on the same fraudulent concealment argument. Holding that MDM's allegations

of fraudulent concealment were sufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6), the Court found that "[d]epending on the evidence, MDM may be able to show that ResortQuest's letter was 'calculated to obstruct any inquiry' MDM might have made into ResortQuest's continued use of the brochure outside North Carolina."  October 1, 2007 Order at 9 (quoting *Taylor*, 712 F.2d at 1118).  Therefore, the question now before the Court is whether MDM has, in fact, come forward with enough evidence to demonstrate a genuine issue as to whether ResortQuest took active steps to conceal its continued use of MDM's brochure so as to toll the limitations period.

To establish fraudulent concealment as a basis for tolling the statute of limitations under Colorado law, MDM must show (1) that ResortQuest "'in equity and good conscience' should have disclosed" its use or reproduction of copyrighted material; (2) that ResortQuest knowingly and intentionally concealed such conduct; (3) that MDM was deceived; and (4) that MDM suffered damages as a result.  *Fisher*, 37 F. Supp. 2d at 1217 (quoting *Smith v. Boyett*, 908 P.2d 508, 512 (Colo. 1995)).  As the Tenth Circuit held in a non-copyright case, "to prove that the statute of limitations was tolled by a defendant's fraudulent concealment, a plaintiff must show that his ignorance of his cause of action was not the result of his lack of diligence, but was due to affirmative acts or active deception by the Defendant to conceal the facts giving rise to the claim.  A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run."  *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (citations omitted).

After examining the facts and arguments relied on by MDM to support its claim that ResortQuest fraudulently concealed copyright infringement, I conclude that MDM

has failed to raise genuine issues as to whether ResortQuest knowingly and intentionally concealed acts of infringement or whether MDM was deceived by ResortQuest's conduct.  Regarding active concealment by ResortQuest, MDM now relies on the same evidence that it did at the motion to dismiss stage.  In particular, MDM cites correspondence between MDM and ResortQuest in January and February 2000 wherein MDM notified ResortQuest that continued use of the MDM brochure was unauthorized and ResortQuest replied that "any use of the MDM brochures past the June 8, 2000 termination date was completely inadvertent."  Resp., Ex. 1 & Ex. 3. ResortQuest assured MDM in its February 2000 letter that "[p]roper measures have been taken" and that "the use of your brochures, except as may be connected with the North Carolina contracts, has stopped and will not happen again."  *Id.*, Ex. 1.  MDM also points to evidence establishing that MDM and ResortQuest continued their business relationship with respect to North Carolina ResortQuest locations following this early 2001 correspondence.  Resp. at 3.  Additionally, MDM charges ResortQuest with removing language taken from the MDM brochure from its websites at some point such that, when MDM reviewed these websites in May 2001, it could not have known that ResortQuest was using allegedly infringing brochures in connection with its damage waiver program.

    None of this evidence shows that ResortQuest's statements in its February 2001 letter to MDM were calculated to obstruct any inquiry by MDM into ResortQuest's use of MDM's brochure outside of North Carolina.  MDM argues that the Court should infer that "ResortQuest's representations were designed to obstruct further inquiry . . . from the context of the letter as a response to MDM's letter of complaint."  Resp. at 3.

However, no such inference can be supported without probative evidence of ResortQuest's intent.  MDM offers no evidence that ResortQuest ever posted language from the MDM brochure on websites for its properties, let alone evidence establishing that such materials were removed in an attempt to deceive MDM.  Nor does MDM offer any other evidence of ResortQuest taking affirmative steps to mislead MDM.  MDM has therefore failed to raise a genuine issue on this point.  *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001) ("The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims.  Unsupported conclusory allegations thus do not create a genuine issue of fact.").

As to the issue of deception, MDM submits that it had "no further warning of unauthorized use of its brochures until after ResortQuest cancelled its participation in MDM's program effective January 1, 2005."  Pl.'s Resp. at 3.  This statement is directly contradicted by evidence in the record.  First, in May 2001, about six months after its November 2000 investigation and well after it received ResortQuest's letter assuring MDM that use of the brochure was inadvertent, MDM conducted a second investigation regarding ResortQuest's use of the Program and brochure.  *See* MSJ, Ex A-7 (MDM internal correspondence regarding ResortQuest damage waiver program, including printouts of ResortQuest property websites describing limited damage waiver).  During this investigation, MDM found website references to a damage waiver program that put MDM on notice that ResortQuest was still offering damage waiver programs and might be using or appropriating MDM's brochure without MDM's involvement.

Second, Michael McNasby testified that in 2003, in a vacation rental conference,

he attended a presentation by a ResortQuest employee regarding ResortQuest's damage waiver program.  Reply, Ex. A-15 at 6-16.  According to Michael McNasby, the ResortQuest employee offered to provide the literature used to describe the damage waiver program at his ResortQuest location, thus providing MDM with notice that ResortQuest had been using a damage waiver program and related materials brochure without MDM's involvement.  *See* Reply at 10 & Ex. A-15 at 12-13.  Michael McNasby further testified that he sent a copy of the CD of the presentation to his father.  Reply, Ex. A-15 at 10–11.

Based on the foregoing, the court finds that MDM has failed to offer evidence sufficient to create a genuine issue of material fact and allow a reasonable factfinder to conclude that all elements of its fraudulent concealment claim are established.

MDM's tolling argument based on the "continuing wrong" doctrine also fails. First, MDM has submitted no authority demonstrating that this tolling theory can be utilized in the context of a copyright case.  In fact, courts in the Tenth Circuit have rejected the doctrine based on precedents holding that Section 507(b) bars recovery of damages for any copyright infringement that occurred more than three years before the lawsuit was filed.  *See Fisher*, 37 F. Supp. 2d at 1217; *Rocking Chair*, 407 F. Supp. 2d at 1266-67 (rejecting the continuing wrong theory because, while "the Tenth Circuit has neither adopted nor rejected this theory, . . . the majority of circuits . . . have rejected the continuing wrong theory in a copyright infringement action").  Second, even if the "continuing wrong" tolling doctrine were viable in this Circuit, MDM has shown no affirmative conduct by ResortQuest that misled MDM so as to prevent it from filing its copyright claims.  Affirmative misleading conduct must be shown to invoke the theory.

12

*See Tiberi v. CIGNA Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996) (holding, in a breach of contract case, that the "continuing wrong" doctrine "cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress").

Accordingly, MDM's copyright infringement claims predating August 3, 2003 are barred by the statute of limitations.

### C.  Copyright Infringement

MDM claims that ResortQuest violated two of its exclusive rights as a copyright holder: (1) the right to distribute copies of the copyrighted work to the public under 17 U.S.C. § 106(3); and (2) the right to prepare derivative works based on the copyrighted work pursuant to 17 U.S.C. § 106(2).  As a threshold matter, the Court sets out the summary judgment standard governing ResortQuest's substantive arguments for dismissal of MDM's copyright claims.  "Though the issue of substantial similarity is frequently a fact issue for jury resolution, . . . a court may determine non-infringement as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar."  *Warner Bros. Inc. v. American Broadcasting Co., Inc.*, 720 F.2d 231, 239-40 (2d Cir. 1983) (internal quotation marks and citations omitted); *see also* 3-12 Nimmer § 12.10[B][3] ("If the court concludes that no trier of fact could rationally determine the two [works] to be substantially similar, it can render a defense judgment as a matter of law."); *cf. King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d

1084, 1089 (10th Cir. 1999) (holding that although the issue of likelihood of confusion in a trademark infringement case is often a jury question, courts "monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion"). Mindful of this standard, the Court turns to the issue of whether a genuine issue remains for trial under Fed. R. Civ. P. 56 with respect to MDM's copyright infringement claims.

### 1.  Right to Distribute

Before analyzing MDM's distribution infringement claim, the alleged acts of unlawful distribution should be identified. MDM challenges ResortQuest's distribution of brochures designed and printed by MDM that MDM provided to ResortQuest as part of their business relationship. MDM claims that ResortQuest improperly distributed these brochures after ResortQuest terminated its relationship with MDM in 2001 with the exception of certain ResortQuest locations in North Carolina. MDM asserts that ResortQuest also unlawfully distributed MDM brochures after it terminated its relationship with MDM regarding the North Carolina locations. Because the statute of limitations precludes any infringement claim predating August 3, 2003, only the second incident involving distribution by ResortQuest is properly at issue. Specifically, MDM presented evidence that a ResortQuest employee sent MDM brochures via facsimile from a North Carolina ResortQuest location to an MDM employee in response to an inquiry about that location's damage waiver program, even though ResortQuest and MDM were no longer business partners at the time of this correspondence. *See* Resp., Ex. 5.

ResortQuest contends that any distribution it made of brochures provided by

MDM is protected under the first sale doctrine[1].  The first sale doctrine is codified in 17

U.S.C. § 109(a), which provides:

> Notwithstanding the provisions of section 106(3), the owner of a particular
> copy . . . lawfully made under this title, or any person authorized by such
> owner, is entitled, without the authority of the copyright owner, to sell or
> otherwise dispose of the possession of that copy . . . .

Thus, the first sale doctrine "prevents the copyright owner from controlling the future

transfer of a particular copy once its material ownership has been transferred."

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 159 (3d Cir. 1984).

Although courts refer to this limitation on the copyright holder's distribution right in terms

of "sales," it applies equally in cases where the title in the copy passes by any transfer,

whether incident to a sale or not.  2-8 Nimmer § 8.12[1][*a*].  MDM does not contest that

the copies of its brochure that MDM provided to ResortQuest were lawfully made.

Thus, the only question with respect to whether ResortQuest infringed MDM's

distribution right is whether ResortQuest owned the copies at issue.

MDM claims that ResortQuest never owned any of the MDM brochures because

MDM licensed ResortQuest to use the brochures, but did not transfer ownership in

---

[1]   MDM argues that ResortQuest waived the first sale defense by failing to raise
it in ResortQuest's first responsive pleading.  Even assuming that the first sale doctrine
constitutes an affirmative defense, MDM's argument contravenes the spirit of the liberal
pleading standards established by the Federal Rules of Civil Procedure and does not
show that MDM suffered any prejudice as a result of ResortQuest first raising the
defense in its motion for summary judgment.  Because the "ultimate purpose" of Fed. R.
Civ. P. 8(c) is "to guarantee that the opposing party has notice of any additional issue
that may be raised at trial," when such notice is given before trial, as in this case, "it is
not error for the trial court to hear evidence on the issue." *Creative Consumer
Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009).  Given the stage of
these proceedings, I find that justice requires consideration of ResortQuest's first sale
defense on the merits.  *See* Fed. R. Civ. P. 8(e).

these copies.  The evidence before the Court, however, does not bear out MDM's

license argument and, instead, supports the conclusion that ResortQuest owned the

copies of MDM's brochure that MDM provided to it.  Two MDM employees testified that

they do not recall anyone from MDM advising ResortQuest that the use and distribution

of MDM's brochures should be restricted or limited in any way.  MSJ, Ex. A-4 at 36 & A-

5 at 49-50.  While one employee stated during his deposition that he thought MDM's

copyright mark on the brochures would lead ResortQuest to conclude that it could not

distribute the copies without MDM's permission, this testimony does not constitute

evidence of any use restriction placed on the brochures at the time they were supplied

to ResortQuest.  MDM employees also stated that they do not recall engaging in any

significant oversight of how ResortQuest was operating the Program or using its

brochures.  MSJ, Ex. A-3 at 108-109 & A-5 at 64.

On the other hand, MDM cites no evidence specific to the relationship between

MDM and ResortQuest that can reasonably be interpreted as creating a license

agreement.  To show that the brochures were subject to a license, rather than

transferred to ResortQuest, MDM submits an out of context deposition statement by

one of its employees apparently relating to a license clause in a contract between MDM

and another party not before the Court.  S*ee* Resp., Ex. 25 at 161.  MDM also proffers

statements made by Joseph McNasby to the effect that MDM provided its brochures to

ResortQuest pursuant to a license and did not gift or otherwise transfer them.  *Id.*, Ex.

25 ¶ 5.  This evidence is not competent to show that there is a genuine issue for trial

that MDM licensed the use of its brochures to ResortQuest rather than permanently

transferring them to ResortQuest.  Most significantly, none of MDM's license evidence

16

(aside from the declarations of its president) is specific to the relationship between MDM and ResortQuest.  Even if one party labeled the transaction a license (which does not appear to be the case here), the actual conduct of the parties under the deal, rather than the label given by one side, controls the analysis of whether or not a transfer occurred.  *See UMG Recordings, Inc. v. Augusto*, 558 F. Supp. 2d 1055, 1060 (C.D. Cal. 2008) (stating that even if an agreement is labeled a license, courts look to the economic realities of the transaction to discern whether a sale or license occurred (citing *Microsoft Corp. v. DAK Indus., Inc.*, 66 F.3d 1091, 1095 (9th Cir. 1995))).  None of MDM's evidence suggests that MDM limited the term during which ResortQuest could possess or distribute the MDM brochures or ever itself attempted to regain possession of these brochures.  Nor does MDM's self-serving affidavit testimony create a genuine issue on this point.  *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995).  Accordingly, any distribution that ResortQuest made of MDM brochures after August 3, 2003 was protected under the first sale doctrine of 17 U.S.C. § 109(a).

## 2.  *Right to Prepare Derivative Works*

MDM must prove two elements to prevail on its second claim of infringement – reproduction of derivative works: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  MDM bears the burden of proof on each of these elements.  *Id*.  ResortQuest does not contest the validity of MDM's copyright.  As to the second element, MDM must prove: (1) that ResortQuest, as a factual matter,

17

copied portions of MDM's work; and (2) that the elements copied by ResortQuest constitute protected expression "of such importance to the copied work that the appropriation is actionable." *La Resolana Architects*, 555 F. 3d at 1178.  ResortQuest argues that it is entitled to summary judgment on MDM's copying claim because, even if factual copying occurred, ResortQuest's damage waiver brochures are not substantially similar to the protectable elements of MDM's work so as to constitute unlawful copying.

MDM has demonstrated that, at minimum, there is a genuine issue of material fact with respect to the question of copying as a factual matter.  Because direct evidence of copying is rare, a plaintiff may rely on indirect evidence to prove the fact of copying "by establishing that [d]efendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *Id.*  ResortQuest concedes that it had access to MDM's work. Additionally, a review of a sample of ResortQuest's brochures shows that they share a number of sentences or phrases with MDM's brochure and include the same exclusions from coverage under the damage waiver.  These similarities are sufficient to create a genuine issue as to factual copying.

Once factual copying is established, the question of whether ResortQuest infringed on MDM's copyright depends on whether ResortQuest's brochures are substantially similar to the protectable elements of MDM's copyrighted work.  *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996).  Although its application is not mandated in every case, the "abstraction-filtration-comparison" test set forth by the Tenth Circuit provides a useful analysis in cases where the work includes both copyrightable and non-copyrightable elements.  *Country Kids*, 77 F.3d at

18

1284.  The Tenth Circuit describes the abstraction-filtration-comparison test as follows:

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work.  Then, we filter out the nonprotectable components of the product from the original expression.  Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Id.* at 1284-85.  The Court applies the abstraction-filtration-comparison test in this case because, as MDM concedes, certain elements of MDM's brochures are not protected by copyright.  Under the final step, "[s]ubstantial similarity is measured by whether an 'ordinary observer,' who is not specifically looking for disparities, would tend to overlook any differences between the works."  *La Resolana Architects*, 555 F.3d at 1180 (citing *Country Kids*, 77 F.3d at 1288).

A general description of MDM's brochure is an appropriate starting point for the abstraction-filtration-comparison analysis.  In essence, the copyrighted work at issue in this case is an explanation of contractual terms to a renter of a vacation rental property.  *See* Resp., Ex. 25 (declaration of MDM president Joseph McNasby) ¶ 4 (describing MDM brochure as "a one page description of coverage").  By way of analogy, MDM's brochure takes the form of a simple explanation of benefits accompanying a limited contract of insurance.  MDM's brochure explains what damages or losses to a rental unit are covered by a renter's payment of a non-refundable damage waiver fee, what is excluded from such "coverage," and how the Program will be administered by a particular property manager.  A description of each of these topics is necessary to convey the elements of the agreement between the property manager and the renter with respect to the damage waiver.  Thus, the MDM brochure is a fact-based work that

19

conveys through legalistic language the details of a damage waiver agreement.

MDM did not originate certain provisions of its brochure.  ResortQuest submitted evidence that its employees discussed the concept of a limited damage waiver program before MDM developed its brochure.  *See* MSJ, Ex. 1.  Notably, ResortQuest materials predating MDM's brochures discuss the development of a "Loss/damage waiver covering accidental breakage and/or damage to specific contents in rental unit up to a specified liability limit."  *Id.* at 1.  The ResortQuest document addressing the damage waiver concept calls the damage waiver the "Peace of Mind Benefit" and notes that coverage under the waiver program would exclude "normal wear and tear, intentional damage, and acts of God."  *Id.*  That ResortQuest conveyed some of this information to MDM during the development of their business relationship appears likely based on the statements of MDM's president, Joseph McNasby, who applied for MDM's copyright in the MDM brochures.  During his deposition, Mr. McNasby described MDM's copyrighted brochure as a "compilation" of "terms and conditions."  Reply, Ex. A-16 at 92.  Mr. McNasby further stated that MDM "created an organization of material . . . rather than creating new terms."  *Id.*  Consistent with these statements, Mr. McNasby indicated on his copyright application that MDM sought a copyright for a compilation or derivative work.  *See* Compl., Ex. 2.

Compilations of facts or preexisting materials are copyrightable.  17 U.S.C. § 103(a).  However, "[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work."  *Id.* § 103(b).  Accordingly, "copyright protection may

extend only to those components of a work that are original to the author." *Feist*, 499 U.S. at 348.  Such copyright protection applies to the author's original selection or arrangement of the underlying facts or preexisting materials.  *Id.*  Under this rule, certain words or phrases utilized in the MDM brochure cannot be the subject of copyright.  Specifically, the title of MDM's brochure – Peace of Mind Protection Plan Limited Damage Waiver – and standard legal phrases such as "acts of God," "normal wear and tear," "gross negligence or willful and wanton conduct," and "intentional acts" are not protected by MDM's copyright.  The brochure's generic headings also fall into this category.  These elements of the MDM brochure either existed in ResortQuest's draft document outlining the damage waiver program or constitute standard phrases that cannot be the subject of copyright.  *See* 37 C.F.R. § 202.1(a) (listing "[w]ords and short phrases such as names, titles, and slogans" among "examples of works not subject to copyright"); *Health Grades, Inc. v. Robert Wood Johnson*, --- F. Supp. 2d. ----, 2009 WL 1763327, *7 (D. Colo. 2009) ("copyright protection does not extend to fragmentary words or phrases that lack the minimal level of creativity necessary to warrant copyright protection" (citing *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1519-20 (1st Cir. 1996))).  Similarly, phrases such as "plan fees are non-refundable" or "arbitration is required prior to litigation" are not the proper subject of copyright.

Copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied" in a work.  17 U.S.C. § 102(b).  Thus,

where there is only one way, or very few ways, to express a particular idea, such expression cannot be copyrighted.  *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993).  This is the doctrine of merger, which seeks to avoid granting a monopoly over "the only, or one of only a few, means of expressing [an] idea."  *Id.*  The Court finds that certain expressions contained in MDM's brochure fall into this category of inherently limited expression of ideas.  In particular, the MDM brochure begins by explaining that "an enrolled Covered Guest under this Plan . . . will not be obligated to pay for loss or damage to covered real or personal property of the owner of the rental unit located within the rental unit that is occupied by the Covered Guest."  Compl., Ex. 1.  This statement expresses the idea of a damage waiver program: a renter who agrees to participate in the program (by paying a non-refundable fee) will not be obligated to pay for damage to the property in the rental unit or to the rental unit itself.  Because there are only a few ways to express the idea that a vacation unit renter will not have to pay for damage under the damage waiver program, the foregoing statement is not subject to copyright protection.  The Court finds that the same is true for the statements in MDM's brochure describing the exclusions of the program.  For example, the idea that the damage waiver program does not cover damage or loss resulting from a pet or that it does not apply to a renter's own personal property are difficult to convey in language substantially different than the language employed by MDM.  MDM's expression of the ideas that the renter must report damage to the rental unit manager within a certain time frame and that the rental unit manager has the "sole authority" to determine what damage has occurred and whether such damage is covered under the damage waiver program falls into the same category.

22

Applying the foregoing copyright principles to MDM's brochure yields the conclusion that much of the MDM brochure is not protected by MDM's copyright. Before comparing MDM's work with ResortQuest's allegedly infringing brochures, these unprotected elements must be filtered out.  The Court finds that the copyrightable expression contained in MDM's damage brochure inheres in the brochure's distinctive organization and wording that is suggestive of an insurance form.  For example, MDM chose to use defined terms such as "Covered Guest" and refer to the damage waiver as a "plan" that is effective for the period of a renter's stay in the rental unit.  Though the headings used by MDM are not copyrightable as such, the ordering of the brochure and its heading structure gives the brochure a distinctive legalistic appearance.  Viewing the MDM brochure in light of its protectable expression as well as the previously discussed exclusions from copyright protection, the Court turns to a comparison of MDM's work with the ResortQuest brochures.  *See TransWestern Publishing Co. LP v. Multimedia Marketing Associates, Inc.*, 133 F.3d 773, 777 (10th Cir. 1998) ("because the copyrightability of a factual compilation depends upon the originality in selection, coordination or arrangement of the facts 'as a whole' work, 17 U.S.C. § 101, in an infringement action the court must compare the allegedly infringing work as a whole also").

One further issue remains regarding the substantial similarity test to be applied in this case: how similar must ResortQuest's brochures be to MDM's brochures in order to infringe MDM's copyright?  In cases involving factual works, as opposed to works of fiction, the Tenth Circuit has recognized that the standard for similarity may be heightened.  In *TransWestern Publishing Co. LP v. Multimedia Marketing Associates,*

23

*Inc.*, the Tenth Circuit addressed a dispute between two publishers of phone directories regarding certain yellow pages advertisements in the directories.  Finding that the copyrighted directory was, "at least primarily, a compilation of facts," and entitled to only "thin" copyright protection, the court held that "supersubstantial" similarity must exist between the directories for there to be infringement.  *TransWestern*, 133 F.3d at 776 (citing 4-13 Nimmer § 13.03[A]).  The Tenth Circuit's reference to "thin" copyright protection for factual compilations derives from the Supreme Court's use of that term in *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. at 349.  *Feist* addressed whether the maker of a regional telephone directory who copied listings from a local telephone company's phone directory had infringed the copyright in the local phonebook.  The Supreme Court's characterization of the copyright of the publisher of the local phone directory as "thin" is premised on the fundamental concept of copyright law that facts cannot be copyrighted, but original compilations of facts can.  *Id.*; *see* 17 U.S.C. § 103(b).

The Tenth Circuit again addressed a copyright infringement claim in the context of a factual work in *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002). *Deseret Book* involved a dispute between the author of a historical autobiography dealing with the author's personal experiences during World War II and a publisher that incorporated portions of this historical account into its own series of books.  In *Deseret Book*, the Tenth Circuit declined to apply the "supersubstantial" similarity test that it applied in *TransWestern* – which requires nearly identical treatment of a subject to constitute infringement.  *Id.* at 945.  Distinguishing its earlier ruling, the court held:

> We do not read *TransWestern* so broadly as to require us to apply a supersubstantial similarity test to all fact-based works. Rather *TransWestern* merely reaffirmed the measure of how substantial a substantial similarity must be may vary according to circumstances. Because fact-based works differ as to the relative proportion of fact and fancy, the quantum of similarity required to establish infringement differs in each case.

*Id.* (internal quotation marks and citations omitted).

In light of the foregoing authorities, ResortQuest and MDM take differing positions as to the degree of similarity that MDM must prove in order to demonstrate infringement in this case. ResortQuest claims that MDM's copyrighted work is a factual compilation and that no illicit copying occurred unless MDM can prove supersubstantial similarity between its brochures and those devised by ResortQuest. MDM argues that its copyrighted brochure is more original and creative than the phone directories at issue in *Feist* and *TransWestern* and, thus, infringement should be measured by the traditional substantial similarity test.

In resolving the degree of similarity that MDM must show in this case, the Court finds instructive the Tenth Circuit's opinion in *Dorsey v. Old Sur. Life Ins. Co.,* 98 F.2d 872 (10th Cir. 1938). The court stated:

> A copyright upon a form of contractual provision should not be constructed so as to impinge upon the natural right of persons to make contracts containing the same contractual provisions and creating like contractual rights and obligations, and similarity of expression should not be held to constitute infringement in such cases. Necessarily, where the same contractual provision is to be expressed there will be similarity of language. To constitute infringement in such cases a showing of appropriation in the exact form or substantially so of the copyrighted material should be required.

*Id.* at 874. The Tenth Circuit has since reaffirmed the principle that, "where the protected work and the accused work express the same idea, the similarity that

25

inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Country Kids*, 77 F.3d at 1285.  Like the Tenth Circuit in *Dorsey*, other courts addressing copyright protection in insurance forms have required a high degree of similarity to prove copyright infringement.  *See Cont'l Cas. Co. v. Beardsley*, 253 F.2d 702, 705 (2d Cir. 1958) (stating that previous cases – including *Dorsey* – addressing copyright infringement of insurance and similar forms "have set a stiff standard for proof of infringement"); *Miner v. Employers Mut. Liab. Ins. Co.*, 229 F.2d 35, 35 (D.C. Cir. 1956) (per curiam) (affirming finding of no infringement where trial court found "no similarity in the arrangement of words of plaintiff's [insurance] policies and the arrangement of words in defendant's policy and that defendant [did] not appropriate[] in the exact form or substantially so plaintiff's copyright material'"); *see also BellSouth Advertising & Pub. Corp. v. Donnelley Information Pub., Inc.*, 999 F.2d 1436, 1443 n.18 (11th Cir. 1993) ("Where the form of expression is largely prescribed by functional constraints, the similarity of expression in a subsequent work must be very close in order to establish infringement . . . . [S]imilarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed.") (internal quotation marks omitted).

Combining the principle expressed in the above-quoted passage from the *Dorsey* opinion with the Tenth Circuit's more recent guidance in *Country Kids, TransWestern,* and *Deseret Book Co.*, the Court concludes that MDM must demonstrate a high degree of similarity between its brochure and ResortQuest's brochures in order to prove copyright infringement.  Whether the degree of similarity

must be "supersubstantial" or something involving slightly less overlap is not of particular moment.   Under the circumstances of this case, MDM must show that its original expression of the damage waiver concept was clearly appropriated by ResortQuest.

Applying the appropriate test of substantial similarity, an "ordinary observer" could not rationally view ResortQuest's brochures as substantially similar to MDM's copyrighted brochure.   MDM identifies a number of allegedly infringing ResortQuest brochures that were used at various ResortQuest properties.   *See* Resp., Ex. 7-17. ResortQuest states in its motion that the brochures taken from its Aspen, Colorado location represent the height of the similarity between ResortQuest brochures and MDM's copyrighted work.   The Court agrees, since the other ResortQuest brochures in evidence are either virtually identical to the Aspen brochures or include additional language not found in the Aspen brochures or the MDM copyrighted brochure.

Reviewing these ResortQuest brochures, there are some obvious similarities between the Aspen brochures and MDM's copyrighted brochure.   In particular, both brochures begin by stating that a guest who elects the damage waiver "will not be obligated to pay for loss or damage" to the rental unit or the contents thereof.   Compare Compl., Ex. 1; Resp., Ex. 8.   Both brochures state that the maximum limit of the liability waiver is $3000.   Each states that the staff at the rental property "will have the sole authority" to determine the extent of repairs necessary, while the MDM brochure also extends this authority to determining the "nature and extent of damages" and to determining "eligibility for the waiver of liability described herein."   Both brochures make timely reporting of damage or loss to the rental unit a condition of the damage waiver,

with the MDM brochure making the deadline for such reporting the end of a guest's stay and the ResortQuest brochure advising guests to "promptly" report damage or loss. The brochures also discuss essentially the same coverage window for the damage waiver – from check-in to check-out of the rental property – but do so in different language.

The court finds that none of the foregoing similarities evidence unlawful copying. ResortQuest's brochures address the same idea as MDM's brochure – a limited damage waiver in exchange for payment of a non-refundable fee.  This shared purpose necessitates similar expression because there are a limited number of ways to convey the basic operation of the damage waiver.  Since the ResortQuest brochure does not substantially copy the MDM brochure in its explanation of the purpose of the damage waiver, its duration, and its administration, the similarities in these provisions do not constitute copyright infringement as a matter of law.  *See Dorsey*, 98 F.2d at 874.

The most marked similarity between the ResortQuest brochure and the MDM brochure is in the list of exclusions from the damage waiver program.  As already discussed, the particular phrasing of these exclusions in the MDM brochure is not copyrightable by MDM.  However, both the ResortQuest brochure and the MDM brochure include the same eight conditions arranged in the same order, using very similar and, at times, identical wording.  As to the overlapping substance of the exclusions, the Court finds that the exclusions are dictated purely by function and cannot be copyrighted by MDM without allowing it an impermissible monopoly over the concept of what should be included in a vacation rental property damage waiver and what should not.  *See Country Kids*, 77 F.3d 1285 ("to the extent that the idea and the

28

particular expression cannot be separated, the work cannot be protected by a copyright because protecting the expression in such circumstances would confer a monopoly of the idea upon the copyright owner") (internal quotation marks omitted).  With respect to the arrangement of the eight exclusions, the Court finds that this arbitrary arrangement does not possess sufficient creativity to be considered original, copyrightable expression.  *See CMM Cable Rep*, 97 F.3d at 1519 ("It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." (quoting 1 Nimmer § 2.01[B]))*; cf. Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1374 (10th Cir. 1997) ("the random and arbitrary use of numbers in the public domain does not evince enough originality to distinguish authorship").  Accordingly, the list of exclusions shared between both brochures does not constitute evidence of copyright infringement.

Comparing the brochures side-by-side, differences between ResortQuest's brochure and MDM's brochure overshadow the similarities.  ResortQuest clearly favored prose more approachable to an average renter, foregoing the legalistic phrasing, formal headings, and defined terms utilized by MDM.  Thus, the ResortQuest brochure is shorter in overall length, refers to renters purchasing the damage waiver as only "guests" rather than "Covered Guests," and uses straightforward headings such as "Reporting Damage."  "Although the key to the ordinary observer test is substantial similarities, not differences, courts have acknowledged that a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to the plaintiff's." *Fisher*, 37

29

F. Supp. 2d at 1228 (internal quotation marks omitted).  The Court concludes that the

similarities between the ResortQuest brochure and the copyrighted brochure result

primarily from the need to express the same terms as are included in MDM's damage

waiver brochure (which are not themselves subject to copyright); that to the extent to

which the ResortQuest brochure copies the MDM brochure, it does not copy protectable

elements; and that the ResortQuest brochure takes a significantly different form than

the MDM brochure.

        "When similar works resemble each other only in those unprotected aspects,

then defendant prevails."  4-13 Nimmer § 13.03[B][2].  Thus, an ordinary observer could

not reasonably conclude that the ResortQuest brochure is substantially similar to

MDM's copyrighted work.  ResortQuest is therefore entitled to judgment as a matter of

law on MDM's copyright infringement claims.

### D.  Lanham Act and State Law Claims for False Sponsorship and Approval[2]

        MDM asserts that ResortQuest violated the Lanham Act, 15 U.S.C. §

1125(a)(1)(A), and Colorado state law regarding false sponsorship by distributing MDM

brochures that stated "Plan is designed by MDM Group Associates, Inc." after

ResortQuest terminated its business relationship with MDM.  To prove a claim under §

43(a) of the Lanham Act, MDM must show: "(1) that [ResortQuest] made material false

or misleading representations of fact in connection with the commercial advertising or

promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or

---

        [2] MDM's remaining Lanham Act and state law claims for false sponsorship as
well as its Colorado Consumer Protection Act Claim are predicated on ResortQuest's
alleged misrepresentations regarding sponsorship or approval.  *See* October 1, 2007
Order at 10-16.

mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure [MDM]." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted). "Likelihood of confusion" is an element of MDM's Lanham Act claim and its state law false sponsorship claim. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1470 (10th Cir. 1985) ("'likelihood of confusion' is an essential element of . . . [a] claim of common law unfair competition and false designation of origin under 15 U.S.C. § 1125(a)"). Because MDM has not submitted any more than *de minimis* evidence concerning likelihood of confusion, its false sponsorship claims cannot go forward.

In the Tenth Circuit, "de minimus evidence of *actual* confusion does not establish the existence of a genuine issue of material fact regarding the likelihood of confusion in a trademark-infringement claim." *Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125, 1135 n. 16 (10th Cir. 2003) (citing *King of Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir.1999)); *see also John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1140 (10th Cir. 2008) ("A court may disregard as *de minimis* isolated instances of actual confusion."). MDM is correct that it need not submit evidence of actual confusion to demonstrate a likelihood of confusion. *See John Allan Co.*, 540 F.3d at 1140. Such evidence is, however, "considered the best evidence of likelihood of confusion." *Id.* The entirety of MDM's evidentiary proffer concerning likelihood of confusion consists of two copies of the MDM brochure, one sent to an employee of Equinox (an insurance underwriter that worked on the Program) and the second one sent to Michael McNasby, who was posing as a prospective customer. *See* Def.'s Br. at

31

17; Pl.'s Resp. at 18.  At best, this is *de minimis* evidence of isolated incidents of potential confusion.  Significantly, each of these recipients of allegedly misleading MDM brochures likely was aware that MDM was no longer affiliated with ResortQuest. Without some evidence that ResortQuest more broadly distributed misrepresentations, there can be no inference of a likelihood of confusion.

Accordingly, MDM has not demonstrated that a genuine issue of material fact remains for trial concerning its false sponsorship claims, and ResortQuest is entitled to summary judgment on these claims.  *See Harrison*, 253 F.3d at 557.

### E.  Colorado Consumer Protection Act Claim

MDM claims that ResortQuest's conduct in distributing MDM brochures stating that the "Plan is designed by MDM Group Associates, Inc." constitutes a deceptive trade practice in violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-113(1).  The Court previously declined to dismiss MDM's CCPA claim because, at that stage in the proceedings, it was not possible to determine "the number of Colorado consumers who have been or may be affected by ResortQuest's challenged actions.  And the allegations in MDM's complaint do not foreclose such an impact on Colorado consumers."  October 1, 2007 Order at 16.  Based on the evidence submitted by MDM in response to ResortQuest's motion for summary judgment, however, it is clear that MDM cannot demonstrate the requisite public impact resulting from ResortQuest's alleged distribution of misleading brochures.

To prove a cause of action under the CCPA, MDM must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3)

32

that it significantly impacts the public as actual or potential consumers of the

defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a

legally protected interest; and (5) that the challenged practice caused the plaintiff's

injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142,

146-47 (Colo. 2003).  Under the CCPA, public impact can be shown by reference to

misrepresentations that are "directed to the market generally, taking the form of

widespread advertisement and deception of actual and prospective purchasers." *Hall v.*

*Walter*, 969 P.2d 224, 235 (Colo. 1998).  On the other hand, "[t]he CCPA can not be

used to remedy a purely private wrong." *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006).

This is because the CCPA "was enacted to regulate commercial activities and practices

which, because of their nature, may prove injurious, offensive, or dangerous to the

public." *Id.* (internal quotation marks omitted).

MDM's CCPA claim fails because MDM proffers no evidence of any

misrepresentations by ResortQuest that were directed to the public at large, as

opposed to representations made in the course of private transactions.  The MDM

brochures that MDM contends were misleading were distributed on a case-by-case

basis to specific renters of vacation rental properties.  They were not part of an

advertising campaign, nor made available to the public in general.  Accordingly, MDM

has not shown that a disputed issue of material fact exists with respect to its CCPA

claim.  *See NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1136 (D. Colo. 2007)

(dismissing CCPA claim where distribution of allegedly misleading information was

directed only to certain insurance companies and individuals using the defendant's

website "as a vehicle for obtaining insurance quotes from a variety of companies"); *see also Anderson*, 477 U.S. at 249 ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant ResortQuest International Inc.'s motion for summary judgment [Docket No. 78] is GRANTED.  It is further

**ORDERED** that this matter, and all claims asserted therein, is dismissed with prejudice. The Clerk shall forthwith enter judgment in favor of defendant ResortQuest International Inc. and against plaintiff MDM Group Associates, Inc.  Defendant is entitled to its costs.  *See* D.C.COLO.LCivR 54.1; Fed. R. Civ. P. 54(d)(1).

DATED September 9, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge